```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

RODNEY MCCREA,

    Plaintiff,

v.                              Case No: 2:12-cv-557-FtM-29CM

TRAFFIC CONTROL PRODUCTS OF
FLORIDA, INC.,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #25) filed on May 30, 2014. Plaintiff filed a Response (Doc. #36) on June 20, 2014. With leave of the Court, Defendant filed a Reply (Doc. #41) on July 14, 2014 and Plaintiff filed a Surreply (Doc. #42) on July 21, 2014. For the reasons set forth below, the motion is granted.

**I.**

Plaintiff Rodney McCrea (Plaintiff or McCrea) has filed a four-count Complaint (Doc. #1) against Defendant Traffic Control Products of Florida, Inc. (Defendant or TCP). McCrea alleges that TCP unlawfully discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981 (Section 1981), and the Florida Civil Rights Act of 1992 (FCRA). (Id.) The undisputed facts are as follows.

TCP is a subcontractor in the road construction industry, performing highway signing, road striping, attenuator installation and repair, temporary concrete barrier wall installation, handrail installation, and Maintenance of Traffic (MOT) services. (Doc. #25, p. 3; Doc. #36, p. 4.) Defendant performs work for the Florida Department of Transportation, as well as various cities and counties throughout the state. (Id.) TCP operates offices in Fort Myers, Orlando, Gainesville, and Leesburg, Florida. (Id.)

On August 29, 2007, TCP's Fort Myers office hired McCrea, who is African-American, as an MOT Laborer. (Doc. #25, p. 5; Doc. #36, p. 5.) When he was hired, McCrea had no prior experience in the road construction industry and received an initial hourly wage of $9.00 per hour. (Doc. #25, pp. 5-6; Doc. #36 p. 5.) During the time he was employed by TCP, his wage increased twice: to $9.75 per hour beginning February 22, 2008 and to $10.00 per hour beginning June 20, 2008. (Id.) During his employment at TCP, McCrea was directly supervised by John Roberts (Roberts), an African-American who served as assistant manager of TCP's Fort Myers office. (Doc. #25, p. 6; Doc. #36, p. 6.) Plaintiff also fell under the supervision of Joel Hawkins (Hawkins) a Caucasian who served as manager of the Fort Myers office. (Id.)

On July 28, 2011, Tom Wasielewski (Wasielewski), TCP's general operations manager, met with Hawkins to discuss the financial condition of the Fort Myers branch and determined that

2

a reduction in its workforce was required.  (Doc. #25, pp. 7-8; Doc. #36, pp. 7-9.)  Pursuant to that meeting, two TCP Fort Myers employees, Nelson Bennett (Bennett) and Charles Williams (Williams), were laid off.  (Id.)

Subsequent meetings determined that it would be necessary to terminate a total of five Fort Myers employees.  (Id.)  On August 15, 2011,[1] Hawkins authored a memo suggesting the five employees to be terminated as part of this reduction.  (Id.)  According to Hawkins, seniority was the sole factor he considered in determining which employees would be laid off.  (Id.)  McCrea was among the five employees selected for layoffs and was terminated on August 23, 2011.  (Id.)  Bennett and Williams, the two employees who were already laid off pursuant to the July 28, 2011 meeting between Wasielewski and Hawkins, were also on the list.  (Id.)  The additional two employees selected for layoffs were Jimmy Falligan (Falligan), and Andrew James (James).  They were terminated on August 17, 2011.  (Id.)

---

[1] McCrea concedes that the memo is dated August, 15, 2011.  (Doc. #36, p. 7.)  Because the memo exists in paper form only, there is no electronic metadata confirming its date of creation.  However, other than pointing out the lack of metadata and insinuating misconduct by TCP in this regard (Doc. #36, pp. 3, 9; Doc. #42, pp. 4-5), McCrea offers no evidence that the memo was misdated, whether intentionally or unintentionally.  To the contrary, Hawkins's uncontroverted testimony explicitly states that he created the memo on August 15, 2011.  (Doc. #29, ¶ 28.)

3

Prior to his termination, on August 18, 2011, McCrea filed a charge of discrimination (the Charge) with the Lee County Office of Equal Opportunity. (Doc. #25, p. 11; Doc. #36, p. 7.) In the Charge, McCrea alleged that he was being discriminated against on the basis of his race because African-American employees were paid less than those who were not African-American. (Doc. #36-13.) The Charge also alleges that McCrea was subject to harassment and verbal abuse on account of his race, which resulted in a hostile work environment.[2] (Id.) TCP was notified of the Charge on August 22, 2011, the day before McCrea was terminated. (Doc. #25, p. 21; Doc. 36, p. 7.)

McCrea alleges that TCP's decision to terminate him (and its subsequent decision not to rehire him) was made on the basis of his race and/or served as retaliation for filing the Charge. McCrea also alleges that he suffered racial discrimination prior to his termination because he was paid less that TCP's non-African-American employees. According to McCrea, TCP's actions violate Title VII, Section 1981, and the FCRA.

TCP now moves for summary judgment, arguing (1) that McCrea's termination was the result of seniority-based layoffs; (2) that TCP did not rehire McCrea because he never re-applied; and (3) that its salary determinations were race-neutral.

---

[2] McCrea is not asserting a hostile work environment claim in this case. (Doc. #36, p. 12 n.1.)

4

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces

5

a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

**A.  McCrae's Discrimination Claims (Counts I, III, And IV)**

McCrea alleges that TCP violated Title VII, Section 1981, and the FCRA by treating him less favorably than non-African-American employees.  Specifically, McCrea contends (1) that a Hispanic TCP employee received higher wages than he did despite having the same, or similar, job responsibilities; and (2) that following his termination, TCP rehired a Hispanic former employee instead of McCrea despite the fact that McCrea had more seniority.

Discrimination claims, whether brought under Title VII, Section 1981, or the FCRA, are subject to the same standards of proof and employ the same analytical framework. Bryant v. Jones, 575 F.3d 1281 (11th Cir. 2009) (Title VII and Section 1981 claims employ identical analyses); Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007) (FCRA is construed in accordance with Title VII).  Accordingly, to establish a prima facie case of discrimination based upon disparate treatment, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably;

and (4) he was qualified to do the job." Hall v. Dekalb County, 503 F. App'x 781, 787 (11th Cir. 2013).

When the alleged adverse employment action is a claim of disparate pay, the prima facie case boils down to a showing that the plaintiff "occupies a position similar to that of a higher paid employee who is not a member of [his] protected class." Drake-Sims v. Burlington Coat Factory Warehouse of Alabama, Inc., 330 F. App'x 795, 803 (11th Cir. 2009) (quoting Crawford v. Carroll, 529 F.3d 961, 974-75 (11th Cir. 2008)). "If the plaintiff presents a prima facie case, the employer must offer a legitimate, non-discriminatory reason for the adverse employment action. If the employer does so, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination." Hall, 503 F. App'x at 787.

1. **Prima Facie Case – Disparate Pay**

To satisfy the prima facie case for his disparate pay claim, McCrea must demonstrate that he occupied a position similar to that of a higher paid employee who is not African-American. Drake-Sims, 300 F. App'x at 803. In support of this claim, McCrea compares his compensation to that of Bennett.[3] Prior to his

---

[3] In its motion, TCP also argues that McCrea's discrimination claims are time-barred. However, that argument is premised upon McCrea's anticipated use of certain other TCP employees as comparators. As McCrea no longer relies on those individuals' alleged preferential treatment, the Court need not address TCP's arguments that such claims are untimely.

7

employment with TCP, Bennett, who is Hispanic,[4] had no prior experience in the field (Doc. #36-2, ¶ 11), and TCP does not contest McCrea's assertion that he and Bennett performed similar job functions. Bennett was hired at a wage of $12.00 per hour in December 2010 and remained at that wage until he was terminated in July 2011 as part of the lay-offs that also impacted McCrea. (Id. at ¶ 4.) During the time Bennett was employed by TCP, McCrea earned only $10.00 per hour. (Doc. #25, p. 6; Doc. #36 p. 5.) Accordingly, McCrea has presented a prima facie case.

2. **Prima Facie Case – Failure To Rehire**

   a. *Membership In A Protected Class*

McCrae is African-American, and therefore indisputably a member of a protected class. See, e.g., Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga., 448 F. App'x 17, 20 (11th Cir. 2011). Accordingly, this element of the prima facie case is satisfied.

   b. *An Adverse Employment Action*

McCrea alleges that TCP's failure to rehire[5] him was an adverse employment action. "An employer's failure to recall or

---

[4] TCP argues that because McCrea has previously identified Bennett as African-American, McCrea is precluded from alleging that Bennett is not a member of McCrea's protected class. However, what matters for the purposes of McCrea's prima facie case is whether or not Bennett *is* African-American, not McCrea's perception of Bennett's race. Bennett's testimony explicitly states that he is Hispanic. (Doc. #36-2.)

[5] The Court notes that McCrea acknowledges that he is currently employed by TCP. (Doc. #36, p. 24 n.6 ("McCrea was offered and did accept an unconditional offer of reinstatement . . . .").)

rehire an employee is undoubtedly an adverse employment action where the employee reapplied for the position after termination." Jones v. Alabama Power Co., 282 F. App'x 780, 785 (11th Cir. 2008) (quotation omitted). "If the employer uses formal procedures to announce positions and identify candidates, the plaintiff cannot make out a prima facie case unless he shows that he applied for the position." Id. Here, McCrae acknowledges that he did not reapply for a position at TCP. (Doc. #42, p. 6.) However, there is no evidence in the record concerning the means by which TCP announced the position and identified candidates. Absent such evidence, the Court cannot conclude that McCrea's failure to reapply for his position is fatal to his prima facie case. Accordingly, this element of the prima facie case is satisfied.

### c. *A Similarly-Situated Individual Treated Differently*

This element of the prima facie case requires McCrea to identify similarly-situated employees not within his protected class who did not suffer the same negative employment action as McCrea. "To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects. If this is not the case, the different application of workplace rules does not constitute illegal discrimination." Brown v. Sch. Bd. of

---

Accordingly, McCrea's allegation that TCP failed to rehire him is, in actuality, a claim that TCP did not rehire him soon enough.

Orange Cnty., Florida, 459 F. App'x 817, 819 (11th Cir. 2012). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

Here, McCrea once again points to Bennett as a comparator. As explained above, Bennett is not a member of McCrea's protected class and was similarly-situated to McCrea in all relevant respects. Further, TCP does not contest that it treated Bennett more favorably by rehiring him prior to rehiring McCrea. Accordingly, this element of the prima facie case is satisfied.[6]

### d. A Qualified Individual

To satisfy the final element of his prima facie case, McCrae must show that he satisfied TCP's objective qualifications for employment. McCrae alleges, and TCP does not contest, that McCrae was qualified for his position. Therefore, McCrae has established this element of his prima facie case.

Accordingly, as McCrae has established prima facie cases for his disparate pay and failure to rehire claims, the burden now

---

[6] McCrea also hints that his termination was discriminatory. (Doc. #36, p. 16.) However, McCrea never follows-through with this allegation and never identifies a non-African-American employee who was not laid off despite being less senior than McCrea. Bennett cannot serve as a comparator for such a claim because he was laid off at the same time as McCrea. Accordingly, to the extent McCrea intends to bring such a claim, it must be dismissed for failure to satisfy this element of the prima facie case.

shifts to TCP to provide non-discriminatory reasons for its treatment of McCrea.

### 3. TCP's Non-Discriminatory Reasons For Its Employment Decisions and McCrae's Allegations Of Pretext

As explained above, McCrae can establish prima facie cases of discrimination. Nevertheless, TCP may be entitled to summary judgment if it "articulate[s] a legitimate reason for the action it took against the employee. Once such a reason is articulated, the employee must show that the employer's proffered reason for the adverse action is pretextual." Bailey v. City of Daytona Beach Shores, 560 F. App'x 867, 871 (11th Cir. 2014) (quotations and citations omitted).

TCP argues that McCrea's termination was the result of seniority-based layoffs and that McCrea was not rehired because he did not reapply. (Doc. #25, pp. 7-8; Doc. #41, pp. 5-6). Both assertions have support in the record. Accordingly, TCP has articulated non-discriminatory reasons for its treatment of McCrea. Therefore, the burden shifts back to McCrae, who must demonstrate that TCP's stated reasons were mere pretext for unlawful discrimination.

A plaintiff can demonstrate pretext "by identifying such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Ritchie v. Indus. Steel, Inc., 426 F. App'x 867,

11

872 (11th Cir. 2011) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). Additionally, a plaintiff can "show pretext by demonstrating that the employer did not follow its normal procedures" in reaching its adverse employment decision. Id. When analyzing a claim of pretext, courts must keep in mind that they "do not sit as a 'super-personnel department,' and it is not [their] role to second-guess the wisdom of an employer's business decisions." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010). Accordingly, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting Isenbergh v. Knight–Ridder Newspaper Sales, Inc., 97 F.3d 436, 443–44 (11th Cir. 1996)).

### a. Pretext – Disparate Pay

On the issue of disparate pay, McCrea's sole argument is that TCP's explanation that Bennett's pay rate was the result of an administrative error is unworthy of credence because it is inconsistent with TCP's assertion that it closely evaluates an applicant's prior work experience, the prevailing labor market, and other relevant factors to determine what to pay each new hire. (Doc. #27, ¶¶ 11-13.) However, an assertion that one pays careful

attention to a particular task is not the same as an assertion that mistakes are never made.  Nevertheless, to the extent TCP's two statements could be considered contradictory, such a minor inconsistency would not permit a reasonable jury to conclude that TCP's proffered reason was pretext for racial discrimination.

Moreover, despite having access to TCP's pay records, McCrea identifies no similar errors in favor of Caucasians or Hispanics. To the contrary, TCP's records indicate that TCP corrected its error by reducing Bennett's pay to $10.00 per hour (the same rate McCrea was earning at the time of his layoff) when Bennett was rehired in 2012.  (Doc. #27-5.)  Accordingly, the only relevant evidence in the record _supports_ TCP's proffered explanation that Bennett's initial pay rate was an administrative error.  In sum, McCrea has not provided evidence sufficient to allow a jury to infer that TCP's nondiscriminatory explanation for McCrea's disparate pay was pretext for racial discrimination.  Therefore, TCP is entitled to summary judgment on McCrea's disparate pay claim.

### b.   *Pretext – Failure To Rehire*

As explained above, there is no evidence in the record concerning the means by which TCP announces positions and identifies candidates for rehiring.  For his part, McCrea argues that he did not reapply because he was unaware that a position at TCP was available. (Doc. #42, p. 6.)  Therefore, for the purposes

13

of TCP's motion, the Court will analyze TCP's decision to rehire Bennett under the assumption that TCP was aware that both individuals were potential candidates and TCP actively chose Bennett over McCrea. Accordingly, McCrea can show pretext by providing evidence that would allow a jury to infer that TCP's preference for Bennett over McCrea was the product of unlawful racial discrimination.

It is undisputed that McCrea was senior to Bennett at TCP. (Doc. #27-7, pp. 3, 46.) Accordingly, TCP could not have based its rehiring decision on seniority alone. According to McCrea, this is evidence of pretext because it is inconsistent with TCP's stated policy of conducting layoffs on the basis of seniority. However, McCrea has offered no evidence that TCP's policy (whether stated or unstated) was to *rehire* based upon seniority. To the contrary, TCP creates Termination Reports (Reports) which contain an evaluation of each employee's performance and indicates whether or not TCP would consider rehiring that employee. (Doc. #27-7.) This is evidence that TCP's rehiring decisions were based, at least in part, on criteria other than seniority. Thus, as layoffs and rehiring are separate employment decisions, the mere fact that TCP employed different criteria for each is not evidence of pretext.

Additionally, a comparison of Bennett's and McCrea's Reports demonstrates that TCP had reason to prefer Bennett to McCrea due to each individual's job performance. Bennett received a decidedly

14

more favorable evaluation. (Doc. #27-7, pp. 3, 46.) Further, Bennett's Report states that he "has been a good employee who has always performed his tasks," while McCrea's contains no similar comments. (Id.) Likewise, Bennett's Report notes that he is eligible for rehire "without reservation," while McCrea's states that he is eligible "with some reservation." (Id.) McCrea argues that these discrepancies demonstrate pretext because they show that TCP treated African-Americans and Hispanics unequally. However, McCrea ignores that numerous other African-American employees were, like Bennett, slated for rehire without reservation. (Doc. #26, pp. 36-37, 108, 110, 162; Doc. #27-7, pp. 8, 23, 34, 39.) This strongly suggests that race was not a factor in TCP's creation of the Reports or its rehiring decisions. Thus, the only relevant evidence in the record supports a conclusion that TCP's rehiring decisions were race-neutral.

Accordingly, McCrea has not provided evidence sufficient to allow a jury to conclude that TCP's decision to rehire Bennett was anything but a non-discriminatory exercise of its business judgment. Therefore, TCP is entitled to summary judgment on McCrea's failure to rehire claim.

**B.   McCrae's Title VII Retaliation Claim (Count II)**

In addition to prohibiting employment discrimination in and of itself, Title VII also prohibits retaliation against an employee who opposed an unlawful employment practice or "made a charge,

15

testified, assisted, or participated in any manner" in an investigation concerning alleged violations of Title VII. 42 U.S.C. § 20003-3(a). McCrae alleges that his termination was impermissible retaliation for filing the Charge. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

Here, McCrae cannot satisfy the third prong of his prima facie case. McCrae alleges that he was terminated in retaliation for filing the Charge. McCrae is correct that his August 23, 2011 termination date post-dates TCP's receipt of the Charge on August 22nd. (Doc. #25, p. 21; Doc. 36, p. 7.) However, it is undisputed that on August 15, 2011 Hawkins authored the memo selecting McCrae as one of the five individuals subject to layoffs. (Doc. #25, pp. 7-8; Doc. #36, pp. 7-9.) Thus, it is undisputed that by the time TCP received notice of the Charge, TCP had already decided to lay off McCrea. Logically, an effect cannot precede its cause and, therefore, McCrae cannot establish the necessary causal link between the Charge and his termination. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1259 (11th Cir. 2012); see also Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2005) ("[I]n a retaliation

16

case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."). Accordingly, TCP is entitled to summary judgment on McCrea's Title VII retaliation claim.

To the extent that McCrea is also alleging that TCP's failure to rehire him gives rise to a separate retaliation claim,[7] that claim also fails because, for the reasons set forth above, McCrea has not provided any evidence that TCP's decision to rehire Bennett was anything but a permissible exercise of its business judgment. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001) ("The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff.")

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #25) is **GRANTED,** judgment is entered in favor of Defendant, and Plaintiff shall take nothing. The Clerk shall enter judgment accordingly,

---

[7] Neither the Complaint nor McCrea's voluminous briefing makes clear which alleged adverse employment actions apply to which theories of recovery.

terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __18th__ day of August, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record